JERROLD C. WALD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wald v. Commissioner
Docket No. 10163-77.
United States Tax Court
T.C. Memo 1981-558; 1981 Tax Ct. Memo LEXIS 181; 42 T.C.M. (CCH) 1259; T.C.M. (RIA) 81558; September 29, 1981. Jerrold C. Wald, pro se. Dale L. Newland, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in and additions to the petitioner's Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)
Sec. 6654
1974
$ 4,753
$ 927
$ 238
$ 32
1975
4,607
1,097
230
43
TOTALS
$ 9,360
$ 2,024
$ 468
$ 75
*182 Due to concessions, the only issues remaining for our decision are: (1) whether petitioner's sows are breeding livestock, on the sale of which petitioner is entitled to long-term capital gain treatment pursuant to section 1231(b)(3)(B); (2) whether petitioner's willful neglect in timely filing a proper Federal individual income tax return for the taxable years 1974 and 1975 requires the imposition of an addition to the tax for each of these years pursuant to section 6651(a)(1); (3) whether petitioner's intentional or negligent disregard of the rules and regulations mandating the filing of a proper Federal income tax return for the taxable years 1974 and 1975 requires the imposition of an addition to the tax for each of these years pursuant to section 6653(a); and (4) whether petitioner's underpayment of estimated income tax for each of the taxable years 1974 and 1975 requires the imposition of an addition to the tax. FINDINGS OF FACT Most of the facts in this case have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner, *183 Jerrold C. Wald, resided in Mondovi, Wisconsin, when he filed his petition in this case. Petitioner filed a Form 1040 document for each of the taxable years 1974 and 1975. These Forms 1040 did not contain sufficient information from which income tax liabilities could be computed for either of the taxable years. Part of petitioner's taxable income consisted of wages from which his employers withheld certain sums for the payment of petitioner's Federal income tax liability, pursuant to law. The amount withheld, however, did not equal or exceed the amount required to be withheld from petitioner's taxable income as recomputed by the Commissioner. A portion of petitioner's taxable income was derived from the sale of sows. Sows are female pigs which have borne one or more litters. In the normal course of nature a female pig would not bear a litter until it was at least 12 months old. Such a sow would not be sold immediately thereafter because of the need for it to be "dried," which appears to mean that its piglets are weaned and its milk supply reduced. A sow's purpose in life is to raise piglets. In petitioner's words, "sows do not make good pets (sic) or can't be ridden like a *184 horse." It is possible that a sow might in an unusual circumstance bear a litter early and be sold immediately, but this fact would be known. The seller would receive a lesser price for such a sow because the sow would have a larger udder and, hence, a greater portion of the animal could not be sold as a food product. By the time of the years in question petitioner had raised hogs for a number of years and owned in the neighborhood of 70 hogs. While he purchased male hogs for breeding from several sources, his sows came primarily from his own breeding stock. He customarily raised at least one and, frequently, several litters from each of these sows for the purpose of selling them. Records of the purchaser with whom petitioner dealt reflect, among other things, whether or not the pig sold was a sow, the weight of the pig sold, and the price at which it was sold. ULTIMATE FINDING OF FACT The pigs sold by petitioner which were marked on the transaction record as sows were breeding stock held for a period equal to or greater than 12 months. OPINION The first issue for decision is whether petitioner is entitled to capital gains treatment on the sale of his sows. The pertinent *185 portions of section 1231 and the regulations thereunder provide: SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS. (b) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.--For purposes of this section-- (3) LIVESTOCK.--Such term includes-- (b) other livestock, regardless of age, held by the taxpayer for draft, breeding, dairy, or sporting purposes, and held by him for 12 months or more from the date of acquisition. Sec. 1.1231-2. Livestock held for draft, breeding, dairy, or sporting purposes. (b)(2) The application of this paragraph is illustrated by the following examples: Example (3). A taxpayer in the business of raising hogs for slaughter customarily breeds sows to obtain a single litter to be raised by him for sale, and sells these brood sows after obtaining the litter. Even though these brood sows are held for ultimate sale to customers in the ordinary course of the taxpayer's trade or business, they are considered as held for breeding purposes. Petitioner maintains that the transaction documents prepared by his purchaser clearly show that the sows which he sold in the years in question were held for breeding stock and *186 sold only after being held 12 months or more. Respondent argues that petitioner had no books and records to separate purchased sows from raised sows and that petitioner's principal purpose in holding the sows was to fatten them for slaughter and only secondarily to breed them. We agree with the petitioner. On the basis of the entire record, we find that these sows were held for the requisite period of time. We also find that these sows were held for breeding purposes, as the Commissioner's own regulations provide. Accordingly, they qualify for capital gains treatment under section 1231. The remaining issues will be treated together. Petitioner maintains that the several additions to tax should not be imposed because of his cooperation with the Commissioner, subsequent to the Commissioner's investigation of his returns. Respondent maintains that petitioner's willful neglect in timely filing a proper individual income tax return for each of the taxable years 1974 and 1975 requires the imposition of an addition to the income tax for each of these years pursuant to section 6651(a)(1). Respondent also maintains that petitioner's intentional or negligent disregard of the rules *187 and regulations mandating the filing of a proper individual income tax return for each of the taxable years 1974 and 1975 requires the imposition of an addition to the income tax for each of these years pursuant to section 6653(a). Finally, the respondent maintains that petitioner's underpayment of estimated income tax for each of the years 1974 and 1975 requires the imposition of an addition to the income tax. We agree with respondent. The petitioner has failed to show, with respect to the taxable years 1974 and 1975, that: (1) he did not willfully neglect to timely file a proper invidual income tax return, (2) that he did not disregard in an intentional or negligent manner the rules and regulations mandating the timely filing of a proper individual income tax return, and (3) that he made the required estimated income tax payments. Petitioner's cooperation with the Commissioner has no bearing on these issues. Decision will be entered underRule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended.↩